IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION


SIDNEY NOWDEN                                                        PLAINTIFF


v.                              NO. 5:16-cv-00044 PSH


CAROLYN W. COLVIN, Acting Commissioner                  DEFENDANT
of the Social Security Administration


<u>MEMORANDUM OPINION AND ORDER</u>


Plaintiff Sidney Nowden ("Nowden") began the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Nowden maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole because Nowden's residual functional capacity was not properly assessed.[1] It is Nowden's position that "[t]here is no medical evidence addressing [his] ability to function in the workplace, other than the non-examining state agency physicians' opinions," <u>see</u> Document 11 at CM/ECF 9, and the ALJ did not rely upon those opinions in assessing Nowden's residual functional capacity.

---

[1] The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." <u>See</u> <u>Boettcher v. Astrue</u>, 652 F.3d 860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." <u>See</u> <u>Brown v. Barnhart</u>, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. <u>See</u> <u>Wildman v. Astrue</u>, 596 F.3d 959 (8th Cir. 2010). As a part of making the assessment, the ALJ is required to evaluate the claimant's credibility regarding his subjective complaints. <u>See</u> <u>Pearsall v. Massanari</u>, 274 F.3d 1211 (8th Cir. 2001). The ALJ makes that evaluation by considering the medical evidence and evidence of the claimant's "daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." <u>See</u> <u>Id.</u> at 1218 [citing <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984)].

On August 22, 2012, Nowden filed an application seeking supplemental security income payments.[2] He alleged in the application that he is disabled on account of his right leg pain, hypertension, and neuropathy. His testimony during the administrative hearing was devoted primarily to his right knee and right wrist impairments, and his brief in this case is devoted entirely to those impairments. Accordingly, the Court will only consider the evidence relevant to Nowden's right knee and right wrist impairments.

---

[2] Nowden alleged in his application that he became disabled on January 1, 2006. The Commissioner correctly notes, though, that supplemental security income payments are not payable for any period prior to the protective filing date of the application seeking such payments. For that reason, the relevant time period for Nowden's application is from the protective filing date of the application, <u>i.e.</u>, August 22, 2012, through the date of the ALJ's decision denying the application, <u>i.e.</u>, September 26, 2014. The Court will nevertheless briefly consider evidence prior to August 22, 2012, for the purpose of placing Nowden's application in context.

A summary of the medical evidence relevant to Nowden's right knee and right wrist impairments reflects that on January 22, 2010, he was seen for a consultative physical examination in connection with a prior application for disability benefits. See Transcript at 245-250. The attending physician recorded Nowden's medical history and noted, inter alia, that Nowden had undergone surgery in 1994 to repair a rupture to the Achilles tendon in his right foot. A physical examination revealed that although he had an abnormal gait, he had normal range of motion in all of his extremities. He also had normal grip strength in both of his wrists. The diagnoses included one of "right lower leg pain," but his disability was characterized as "minimal." See Transcript at 249.

On December 19, 2011, Nowden was seen by a registered nurse practitioner for complaints of, inter alia, pain and soreness in Nowden's right wrist and right knee. See Transcript at 257-258. No abnormal findings were made, although Nowden was diagnosed with "diffuse arthralgias," i.e., joint pain. He was prescribed medication and given injections for his pain.

On October 26, 2012, and again on December 3, 2012, Nowden was seen by Dr. Bryan Raymundo, M.D., ("Raymundo") for complaints of, inter alia, right knee pain. See Transcript at 262, 274-278. A physical examination revealed that Nowden had right knee "crepitus on flexion," a limited range of motion, and an inability to bear much weight on his right leg. See Transcript at 274. An X-ray of his right knee revealed evidence of "mild tricompartmental osteoarthritis." See Transcript at 262. He was prescribed medication and referred to Dr. James Pollard, M.D., ("Pollard").

On November 28, 2012, Nowden was seen by Dr. Don Ball, M.D., ("Ball") for a consultative examination. See Transcript at 267-271. Ball recorded Nowden's medical history and noted Nowden's reports of pain and weakness in his right leg and arthritis in his right knee. A physical examination revealed that although he walked with a limp and could only take two steps on his toes, he exhibited normal range of motion in all of his extremities and his posture and coordination were within normal limits. He also exhibited normal grip strength in both of his wrists. Ball's diagnoses included a diagnosis of an "old surgical repair [of Nowden's right] Achilles tendon." See Transcript at 271.

On January 10, 2013, Pollard saw Nowden for an evaluation of his right knee pain. See Transcript at 316-317. Pollard recorded Nowden's medical history and noted, inter alia, that Nowden had been having right knee pain for six months, the pain increased with weightbearing, and he sometimes walked with a cane. Pollard performed a physical examination and reviewed a series of X-rays. His impression was as follows: "[r]ight knee pain, exact etiology is not clear." See Transcript at 317. Pollard prescribed medication, instructed Nowden on rehabilitation exercises, and ordered MRI testing of his right knee.

MRI testing of Nowden's right knee was performed on January 16, 2013. See Transcript at 335-336. The results of the testing revealed a "[t]iny lateral meniscus tear," some "loose body in the posterior medial compartment," "[m]oderate to severe chondral thinning in the patellofemoral compartment with subjacent edematous marrow in the patella," "[s]prain of the medial collateral ligament," and "[p]atellar tendinosis." See Transcript at 335.

-4-

Pollard saw Nowden again on February 19, 2013, and February 28, 2013. <u>See</u> Transcript at 313-315, 309-311. Although Nowden could bear weight on his right leg, he continued to complain of right knee pain. Pollard opined that the pain was "probably secondary to early osteoarthritis of the patellofemoral joint." <u>See</u> Transcript at 314. After discussing several treatment options with Pollard at both visits, Nowden elected to proceed with arthroscopy of his right knee.

On March 5, 2013, Pollard performed arthroscopic surgery on Nowden's right knee. <u>See</u> Transcript at 327-331. Pollard saw Nowden for at least two post-operative examinations and noted that his pain had largely subsided. <u>See</u> Transcript at 340-341. At a March 15, 2013, post-operative examination, Pollard noted the following: "[Nowden] is doing well. His knee pain is better since surgery. He is ambulating full weight-bearing on the right leg without lateral aids." <u>See</u> Transcript at 341. He was instructed to "work on a home program of knee rehabilitations exercises" and continue taking medication. <u>See</u> Transcript at 341. At an April 12, 2013, post-operative examination, Pollard noted the following: [Nowden] is doing very well with his right knee. His has minimal pain in the right knee." <u>See</u> Transcript at 340. He exhibited full range of motion in his right knee, although he did have some palpable crepitus with active movement. Pollard opined that Nowden could "advance activities as tolerated." <u>See</u> Transcript at 340.

Nowden sought medical attention again for the pain in his right knee on July 20, 2013, and on December 5, 2013. <u>See</u> Transcript at 500-501 (07/20/2013), 349-350 (12/05/2013). A physical examination on July 20, 2013, revealed [right] knee crepitus on

flexion and extension," limited range of motion, and an inability to bear "too much weight." <u>See</u> Transcript at 500. He was prescribed medication and, at the second presentation, given a Kenelog injection.

On May 6, 2014, and again on May 8, 2014, Nowden was seen by a registered nurse practitioner for complaints of pain and soreness in his right knee and right wrist. <u>See</u> Transcript at 347-349, 345-347. A physical examination revealed edema in both joints, and he was given medication. An x-ray of his right wrist revealed "[a]dvanced loss of joint space in the radiocarpal region." <u>See</u> Transcript at 380. The interpreting physician also noted the following: "[h]igh suspicion forscapholunate disruption with moderate volar tilting of the lunate." <u>See</u> Transcript at 380.

In May of 2014, Nowden was seen by Dr. Richard Wirges, M.D., ("Wirges") for complaints of right wrist pain. <u>See</u> Transcript at 385-386, 389-390. Wirges recorded Nowden's medical history and noted, in part, the following:

> This is a 48-year-old gentleman, right-hand dominant, does a lot of lifting, heavy work, comes in with pain in his wrist, has had it for years. It has gotten worse over time. It has gotten to the point now where it is affecting all his function and comfort. He has tried splints, anti-inflammatories, behavior modifications, and has not improved his symptoms and has not been able to control them to make him functional or comfortable. He comes in vascularly intact. He is neurologically grossly intact. X-rays show he has a slack wrist. He does have some arthritic changes minimal of the radiocarpal joint on the scaphoid side and problems with his radial styloid. He does have a DISI [<u>i.e.</u>, dorsal intercalated segment instability] deformity and has discomfort all throughout this area when stressing. This is affecting his function and his comfort. He [has] already lost a significant amount of his motion compared to the contralateral side, especially with flexion and extension, and he has lost grip strength.

See Transcript at 385. Wirges recommended a "right wrist 4-corner fusion with scaphoid excision, radial styloidectomy, and a partial wrist denervation," and Nowden agreed to the procedure. See Transcript at 385.

On June 3, 2014, Wirges performed the agreed upon surgery on Nowden's right wrist. See Transcript at 391-392. Wirges followed Nowden's recovery from the surgery and saw him on at least six subsequent occasions. See Transcript at 387-388 (06/17/2014), 503 (07/18/2014), 504 (09/05/2014), 12 (12/31/2014), 11 (02/27/2015), 10 (03/31/2015). Wirges' progress notes reflect that although physical examinations and testing indicated that Nowden's right wrist was improving and he was approaching maximum medical improvement, he continued to complain of pain. Nowden received therapy and, at one point, was released to "light duty with the hand." See Transcript at 504. By the time Wirges saw Nowden on March 31, 2015, Wirges' progress note contained the following observations and plan:

> … X-rays showed good healing but he continues to be limited in his motion still had pain going to … his wrist. We sent him for CT scan just to make sure there is not any other abnormalities/incomplete healing. CT scan shows good fusion and no other gross abnormalities seen or found. Hardware still in good position. On exam, he has great range of motion of his fingers and thumb and excellent pronation/supination. He [is] still limited in his flexion [and] extension more so than the radial and ulnar deviation. His scars healed great and he has no soft tissue abnormalities. Clinically he has no signs of RSD/chronic regional pain syndrome. He states it has improved some over the last month and that he feels [capable of] doing all the therapy on his own and does not want to go to formal therapy.
>
> …
> At this point, I cannot find any other source [or] cause [of his] pain besides

just the stiffness and scar. He wants to do the therapy on his own [so I am]
going to let him. … At this point, I do not think … we can really do [much]
to help him …

See Transcript at 10.

Nowden's medical records were reviewed by state agency physicians. See
Transcript at 77-84, 87-98, 306-307, 337-338, 342-343. The physicians agreed that
Nowden has no severe impairments.

A summary of the non-medical evidence relevant to Nowden's right knee and right
wrist impairments reflects that he was born on October 28, 1965. See Transcript at 55.
He was forty-eight years old at the time of the administrative hearing.

Nowden completed a series of documents in connection with his claim for
supplemental security income payments. See Transcript at 190-191, 192-199, 210-211,
212-219. In the documents, he represented, inter alia, that he has difficulty climbing
stairs, bending, standing, walking, and squatting. He can attend to most of his personal
care, can prepare very simple meals, can perform basic household chores, and is capable
of performing limited yard work. His hobbies and interests include reading and watching
television, although the pain in his right knee makes it difficult for him to sit for
extended periods of time. He takes medication for his pain.

The record contains a summary of Nowden's FICA earnings. See Transcript at 171.
The summary reflects that he had no reportable earnings of any amount between 1980
and 2013, save minimal earnings in 1984, 1986, 1990, and 2005.

Nowden testified during the administrative hearing. <u>See</u> Transcript at 55-66. He has a high school diploma and has only worked "cash jobs" throughout his lifetime. <u>See</u> Transcript at 57. He acknowledged that in April of 2014, or twenty months after filing the application at bar, and two months before his right wrist surgery, he briefly worked a job that required heavy lifting. The work, though, caused his hand to swell. Nowden takes, or has taken, prescription medication for the pain in his right wrist, medication that has included hydrocodone, oxycodone, and percocet. He testified that he can do "nothing" with his right hand, <u>see</u> Transcript at 63, specifically noting that he cannot perform any household chores and even has difficulty bathing and feeding himself. When asked what prevents him from performing a "sit-down job," he answered, "I'm right-handed." <u>See</u> Transcript at 66.

The ALJ found at step two of the sequential evaluation process that Nowden has severe impairments in the form of "status-post arthroscopic chondroplasty of lateral femoral condyle and patella of the right knee and osteoarthritis of the wrist." <u>See</u> Transcript at 36. The ALJ then assessed Nowden's residual functional capacity and found that he retains the ability to peform light work, except that he can only "kneel and crawl occasionally" but can "frequently reach, handle, finger, and feel." <u>See</u> Transcript at 38.[3]

There is little doubt that Nowden experiences pain in his right knee and right

---

[3]

The ALJ found at step four that Nowden has no past relevant work but found at step five that there is other work he can perform. The ALJ identified the work as that of a "cashier II, charge clerk, call out operator, and surveillance monitor." <u>See</u> Transcript at 43. The ALJ therefore concluded that Nowden is not disabled as that term is defined by the Social Security Act.

wrist. The question for the ALJ was not whether Nowden experiences such pain but rather the extent to which it impacts the most he can do despite his limitations. The evidence on that question is conflicting and is capable of more than one acceptable characterization. The ALJ incorporated a limitation for Nowden's right knee and right wrist pain into the assessment of his residual functional capacity but did not find the pain to be disabling. The ALJ could find as he did as substantial evidence on the record as a whole supports his characterization of the evidence and his assessment of the limitations caused by Nowden's pain. The Court so finds for three reasons.

First, the ALJ adequately considered the medical evidence relevant to Nowden's right knee pain, pain Pollard attributed to "probable early osteoarthritis of the patellofemoral joint." Pollard performed arthroscopic surgery on Nowden's right knee, after which Pollard observed that, inter alia, Nowden was "doing well," had minimal pain, had full range of motion but some palpable crepitus with movement, and was "ambulating full weight-bearing on the right leg without lateral aids." Pollard's observations indicate that much of Nowden's pain subsided after the surgery.

After Pollard's last post-operative examination of Nowden on April 12, 2013, Nowden sought only minimal medical attention for his right knee pain. Specifically, he sought medical attention for his pain on July 20, 2013, December 5, 2013, May 6, 2014, and May 8, 2014. The observations made during those examinations were unremarkable, and he only received conservative treatment for his pain.

Second, the ALJ adequately considered the medical evidence relevant to Nowden's

right wrist pain. Wirges operated on Nowden's right wrist on June 3, 2014, after which Wirges observed that, <u>inter alia</u>, the condition of the wrist was "improving" and approaching maximum medical improvement despite Nowden's continued complaints of pain. On September 5, 2014, Wirges released Nowden to "light duty with the hand." By the time Wirges saw Nowden on March 31, 2015, Wirges observed, in part, that Nowden showed "good healing," limited range of motion in his wrists but "great range of motion of his fingers and thumb and excellent pronation/supination," and continued limitation in his "flexion [and] extension more so than the radial and ulnar deviation." Wirges' observations indicate that there was little medical basis to substantiate Nowden's complaints of disabling right wrist pain.

Nowden maintains that there is no medical evidence addressing his ability to function in the workplace. It is true there is no one medical opinion that mirrors the ALJ's assessment of Nowden's residual functional capacity, but no such opinion is required. The ALJ is merely required to assess the claimant's residual functional capacity on the basis of all the relevant evidence. <u>See Pearsall v. Massanari</u>, 274 F.3d 1211 (8th Cir. 2001). The manner in which the ALJ evaluated the medical evidence in this case was not outside the "zone of choice." <u>See Hacker v. Barnhart</u>, 459 F.3d 934 (8th Cir. 2006).[4]

Third, the ALJ adequately considered the non-medical evidence relevant to

---

[4]

An ALJ's decision will be disturbed only if it falls outside the available zone of choice. "A decision is not outside that zone of choice simply because [the court] may have reached a different conclusion had [it] been the fact finder in the first instance." <u>See Hacker v. Barnhart</u>, 459 F.3d at 936.

Nowden's right knee and right wrist pain. The ALJ specifically considered Nowden's daily activities, which Nowden testified were extremely limited. There is little evidence, though, to support such an extreme limitation of his daily activites. It is possible that the limitation of his activities is the product of a personal choice and not the consequence of his impairments. It is also worth noting that when Nowden was seen by Wirges in May of 2014, Nowden reported to having done a "lot of lifting, heavy work."

With respect to the duration of Nowden's pain, he represented on May 6, 2014, that he had been experiencing soreness in his right knee and right wrist for three days. It is thus possible to conclude that his pain is intermittent and not constant.

The ALJ also specifically considered Nowden's use of medication. The ALJ could and did note that Nowden's right knee pain has been treated conservatively since Pollard performed arthroscopic surgery on March 5, 2013. It is true that he has taken prescription pain medication in the past, but he was only taking hydrocodone at the time of the administrative hearing. It is unclear what relief he obtains from the medication.

The ALJ also considered other matters that call into question Nowden's credibility regarding his complaints of disabling right knee and right wrist pain. The ALJ could and did note that Nowden has a poor work record, having only sporadically worked "cash jobs." The ALJ could and did also note that in a function report dated October 12, 2012, Nowden did not allege limitations concerning, inter alia, "lifting, sitting, kneeling, reaching, or using his hands ..."

The governing standard in this case, i.e., substantial evidence on the record as a

whole, allows for the possibility of drawing two inconsistent conclusions. <u>See</u> <u>Culbertson</u> <u>v. Shalala</u>, 30 F.3d 934 (8th Cir. 1994). In this instance, the ALJ's assessment of Nowden's residual functional capacity was not improper, and the ALJ could find as he did.

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Nowden's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 23rd day of January, 2017.


_____

UNITED STATES MAGISTRATE JUDGE